UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DIARRA WILLIAMS, and ) <br> NICHOLAS WARFORD, ) <br> ) <br> Defendants. ) | No. <br><br> **4:25CR93-HEA/RHH** |

## INDICTMENT

The Grand Jury charges that, at all times material to this Indictment, unless otherwise specified below:

### INTRODUCTION

1. During their crimes outlined below, Defendant Diarra Williams and Defendant Nicholas Warford defrauded the State of Missouri out of more than seven million dollars in taxpayer funds that were supposed to be spent on feeding low-income children. In committing their crimes, Defendant Williams and Defendant Warford laundered millions of dollars that they received from the State of Missouri so that they could pay for extravagant vacations, luxury vehicles, and a $1.44 million residence for themselves.

2. Defendant Williams and Defendant Warford are married to each other, and they executed the scheme to defraud through their operation of a non-profit organization called The Bailey Foundation ("T.B.F."), which was located in the Eastern District of Missouri. As the owner of T.B.F., Defendant Williams ran her purported charity's day-to-day operations. Defendant

1

Warford—along with his wife—incorporated T.B.F., and Defendant Warford helped Defendant Williams defraud the State of Missouri through their operation of T.B.F.

3. Defendant Warford also owned a company called Warford's Classic Catering LLC ("W.C.C.") that he and Defendant Williams used to launder millions of dollars in fraudulently obtained state meal funds. As the only two signors on the W.C.C. bank account (Midwest BankCentre account ending in 5875), Defendant Warford and Defendant Williams controlled the finances of W.C.C. To launder the fraudulently obtained money that T.B.F. received to feed low-income children, Defendants paid those funds to W.C.C. and created phony invoices to make it appear as though the funds were spent on children's meals. In reality, Defendant Williams and Defendant Warford used the vast majority of the state's dollars to fund their own personal expenses.

### T.B.F.'s Participation in Missouri's Food and Nutrition Programs for Children

4. The State of Missouri, through its Department of Health and Senior Services ("Missouri DHSS"), administered food and nutrition programs designed to provide nutritious meals to low-income Missouri children. To fulfill the mission of feeding low-income Missouri children, Missouri DHSS administered two programs: **(1)** the At-Risk, Afterschool Child Food Program, and **(2)** the Summer Food Service Program (collectively "Missouri's Food and Nutrition Programs for Children"). Both programs are funded by the United States Department of Agriculture. Missouri's Food and Nutrition Programs for Children provided funds for meals served to low-income, school-age students after school and during the summer, when school was not in session. The meals were served by schools and community-based, nonprofit organizations at hundreds of locations throughout Missouri.

5. Through Missouri's Food and Nutrition Programs for Children, Missouri DHSS paid reimbursements to nonprofits that provided qualifying meals to low-income children in Missouri. To qualify for those state meal reimbursements, nonprofits—like T.B.F.—had to truthfully represent in their reimbursement claims that qualifying meals were provided to low-income Missouri children. For a meal to be reimbursable under both programs, the meal had to include several specific items, including an eight-ounce serving of fluid, white milk, a meat, a vegetable, a fruit, and a grain.

6. As another requirement to receive reimbursements from Missouri's Food and Nutrition Programs for Children, T.B.F. had to agree to use state meal reimbursement funds only in connection with the nonprofit's provision of meals to low-income children. To obtain state meal reimbursement dollars, Defendant Williams, on behalf of T.B.F., agreed that all "reimbursement funds . . . [would be] used solely for the conduct of the food service operation, or to improve the food service operation, principally for the benefit of enrolled [children]."

7. For a nonprofit to continue receiving state meal reimbursement dollars, the nonprofit also had to submit annual management plans. In each required annual management plan, the nonprofit had to answer several questions designed to ensure that state meal reimbursement dollars were spent only in connection with the provision of meals to low-income children. For example, T.B.F. had to answer whether the organization "purchase[s] supplies, equipment, furniture, or other items with an aggregate purchase cost over $5000 in a one-year period?" In addition, T.B.F. had to detail for Missouri DHSS all of the equipment that was purchased with more than $5,000 in meal reimbursement funds every year. To continue receiving state meal reimbursement dollars, Defendant Williams represented to the State of Missouri that T.B.F. did not purchase any items over $5,000.

8. In the annual management plan, T.B.F. also had to answer the following question: "How will you ensure that all operational and administrative costs incurred are allowable and accurately reflect the operation of the program? (All costs must be included in your budget.)" To continue receiving state meal reimbursement dollars, Defendant Williams answered this question by representing to the State of Missouri that "all costs are accurately and directly related to the efficient operation of the program[.]"

## COUNT ONE
### (Wire Fraud Conspiracy: 18 U.S.C. § 1349)

9. Each of the above allegations is hereby incorporated by reference as if fully set forth herein.

10. Beginning in or about November 2018, and continuing through at least in or about February 2025, in the Eastern District of Missouri and elsewhere, the defendants,

**DIARRA WILLIAMS** and
**NICHOLAS WARFORD,**

voluntarily and intentionally combined, conspired, confederated, and agreed with each other and others known and unknown to the Grand Jury, to commit the following offense against the United States:

(a) Having devised and intended to devise a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses and representations and for the purpose of executing such scheme, and attempting to do so, did knowingly cause and attempt to cause to be transmitted by means of wire communication in interstate commerce, writings, signs, and signals in the form of interstate electronic communications, in violation of Title 18, United States Code, Section 1343.

4

All in violation of Title 18, United States Code, Section 1349.

## Manner and Means of the Scheme and the Conspiracy

13. The primary purpose of the conspiracy was to execute a wire fraud scheme and artifice to defraud and obtain money, specifically, public funds from Missouri DHSS, by means of materially false and fraudulent pretenses, representations, and promises. The conspiracy was carried out by Defendants in the following manner:

**I. Defendant Williams and Defendant Warford Defrauded the State of Missouri—and Enriched Themselves—Through the Submission of Fraudulent Meal Reimbursement Claims for Millions of Meals that T.B.F. Never Served.**

14. Between in or about March 2020 and in or about July 2022, Defendant Williams—on behalf of T.B.F. and within the Eastern District of Missouri—submitted false and fraudulent meal reimbursement claims to Missouri DHSS. Defendant Williams submitted these false and fraudulent meal reimbursement claims so that she and Defendant Warford could take millions of dollars from Missouri's Food and Nutrition Programs for Children that they were not entitled to receive.

15. In furtherance of the fraud scheme, Defendant Williams submitted fraudulent meal reimbursement claims to Missouri DHSS for millions of meals that T.B.F. never served. Through her fraudulent reimbursement claims, Defendant Williams falsely represented that T.B.F. served a total of 2,237,337 reimbursable meals to low-income Missouri children. In truth and fact, however, neither the Defendants, nor any of their entities, ever purchased enough food and milk to serve more than approximately one-third of the meals for which they were paid. Based on Defendant Williams' material misrepresentations in her fraudulent meal reimbursement claims, Missouri DHSS paid out nearly five million dollars that Defendants were not entitled to receive.

## II. Defendant Williams and Defendant Warford Attempted to Conceal Their Scheme to Defraud the State of Missouri.

16. During their scheme to defraud the State of Missouri out of millions of dollars that Defendants had agreed to spend on feeding children, Defendant Williams and Defendant Warford attempted to conceal their scheme by sending millions of dollars in state meal reimbursement funds to W.C.C., creating phony W.C.C. invoices reflecting reimbursable meal purchases that were never made, and making false representations to Missouri DHSS about their use of the state meal funds.

### A. To Make it Appear as Though T.B.F. Purchased Meals When it Did Not, Defendants Sent Millions of Dollars in Public Funds to W.C.C. and Created Phony W.C.C. Invoices Reflecting Meal Purchases That Were Never Made.

17. In working together to conceal the fraudulent reimbursement claims for millions of meals that T.B.F. never served, Defendant Williams and Defendant Warford created a false paper trail, making it appear as though T.B.F. purchased reimbursable meals from W.C.C. when it did not. To create the false record of fake meal purchases, Defendant Williams regularly sent payments from her T.B.F. bank account (Midwest BankCentre bank account ending in 5927) to the W.C.C. bank account (Midwest BankCentre account ending in 5875) that she controlled along with Defendant Warford. In truth and fact, Defendant Williams made those payments—not only to reimburse W.C.C.'s minimal food purchases—but to allow herself and Defendant Warford to use public funds for their own personal expenses.

18. To further conceal Defendant Williams' fraudulent reimbursement claims for meals that T.B.F. never served, Defendants created phony monthly invoices for W.C.C. reflecting purchases of reimbursable meals that were never made. For example, Defendants created a phony W.C.C. monthly invoice for April 2021, which falsely represented that W.C.C. delivered to T.B.F 208,456 reimbursable meals, with each meal including an eight-ounce serving of milk. In reality,

6

however, W.C.C. paid less than $5,000 on food and did not purchase a single eight-ounce serving of milk during April 2021.

19. Also as part of their scheme, Defendant Warford emailed many of the phony W.C.C. invoices to Defendant Williams in a further attempt to create a false paper trail of meal purchases that were never made by T.B.F. To further conceal their fraud, Defendant Williams and Defendant Warford produced phony W.C.C. invoices in response to federal grand jury subpoenas.

**B. Defendant Williams and Defendant Warford Attempted to Conceal Their Improper Use of Public Funds.**

20. To obtain state meal reimbursement dollars, Defendant Williams falsely represented to Missouri DHSS that T.B.F.'s "reimbursement funds . . . [would be] used solely for the conduct of the food service operation, or to improve the food service operation, principally for the benefit of enrolled [children]." In truth and fact, however, Defendant Williams provided over $6 million in state meal funds to W.C.C. so that she and Defendant Warford could use state meal funds for their own personal expenses. In doing so, Defendant Williams and Defendant Warford used the public funds—that they promised to spend on feeding low-income children—on the following personal residence and vehicles for themselves.

| Purchase Date | Property Purchased | Amount Paid |
|---|---|---|
| 3/27/2021 | Personal vehicle of Defendant Williams, 2018 Lincoln Navigator (VIN: 5LMJJ2LT2JEL02437) | $63,236.54 |
| 6/9/2021 | Personal residence of Defendant Williams and Defendant Warford, located at 8416 Rockridge, Edwardsville, IL 62025 | $1,449,000.00 |
| 11/9/2021 | Personal vehicle of Defendant Warford, 2019 Ram 1500 Rebel (VIN: 1C6SRFLT5KN784521) | $38,531.36 |
| 2/11/2022 | Personal vehicle of Defendant Williams, 2017 Chrysler Pacifica (VIN: 2C4RC1GG3HR811929) | $11,879.94 |
| | | **Total: $1,562,647.84** |

21. To further conceal Defendants' use of public meal dollars to purchase themselves a $1.44 million residence, Defendant Warford wired the purchase price of the home from Defendants' W.C.C. bank account (Midwest BankCentre account ending in 5875) to his own personal checking account (Navy Federal Credit Union bank account number ending in 0939), and then to First American Title—all within 24 hours of Defendants' home purchase.

22. To further disguise Defendants' improper, personal use of public funds, Defendant Warford falsely represented to the Internal Revenue Service that Defendants' $1.44 million home purchase, their 2018 Lincoln Navigator purchase, their 2019 Ram purchase, and their 2017 Chrysler Pacifica purchase were all business expenses of W.C.C.

23. Defendant Williams and Defendant Warford also used state meal funds—that Defendant Williams sent from T.B.F. to W.C.C.—to spend over $140,000 on extravagant vacations for themselves, to pay over $100,000 on furniture, home electronics, and landscaping for their new residence (that was also purchased with state meal dollars), and to fund more than $50,000 in tuition payments for their children's school. On top of the millions in public meal funds that Defendants spent on themselves, Defendant Williams and Defendant Warford also provided Defendant Warford's mother with $460,320.00 in funds that they promised to spend on feeding low-income children. To disguise this improper use of public funds, Defendant Warford falsely represented to the Internal Revenue Service that public meal fund payments to his mother were business expenses of W.C.C.

24. In addition, Defendant Williams submitted to Missouri DHSS annual T.B.F. budgets and management plans, which included false and fraudulent representations designed to conceal Defendants' improper use of public meal funds. For example, in T.B.F.'s annual management plan that Defendant Williams submitted on or about April 5, 2021, Defendant

8

Williams falsely and fraudulently represented that T.B.F. did not purchase any items over $5,000. But just four months prior, on or about December 22, 2020, Defendant Warford used $16,000.00 in T.B.F.'s meal reimbursement dollars—that were supposed to be spent on feeding children—to purchase a 2011 Mercedes Benz Sprinter (VIN: WD3PE7CC0B5602167). In that same management plan, Defendant Williams falsely and fraudulently represented to the State of Missouri, on behalf of T.B.F., that "all costs are accurately and directly related to the efficient operation of the program[.]" Yet, in truth and fact, Defendant Williams and Defendant Warford spent the vast majority of the meal reimbursement funds received by T.B.F. on their own personal expenses.

25. Based on the material misrepresentations that Defendant Williams made to Missouri DHSS throughout the scheme to defraud, Missouri DHSS paid Defendants more than seven million dollars in public funds.

## COUNTS TWO – EIGHT
### (Wire Fraud: 18 U.S.C. §§ 1343 and 2)

26. Each of the allegations included in this Indictment is hereby incorporated by reference as if fully set forth herein.

27. Beginning by at least on or about November 28, 2018, and continuing through at least on or about February 28, 2024, in the Eastern District of Missouri, and elsewhere, the defendants,

**DIARRA WILLIAMS** and
**NICHOLAS WARFORD,**

with the intent to defraud, devised and intended to devise a scheme and artifice to defraud Missouri DHSS and to obtain money and property from Missouri DHSS by means of material false and fraudulent pretenses, representations, and promises, as described further herein.

28. On or about the dates set forth below, within the Eastern District of Missouri, for the purpose of executing the above-described scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same, Defendants did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, to wit:

| Count | Date | Wire Description |
|---|---|---|
| 2 | 1/15/2021 | The State of Missouri's payment of $512,276.94 in meal reimbursement funds to T.B.F.'s bank account |
| 3 | 2/19/2021 | The State of Missouri's payment of $565,745.19 in meal reimbursement funds to T.B.F.'s bank account |
| 4 | 3/18/2021 | The State of Missouri's payment of $624,537.16 in meal reimbursement funds to T.B.F.'s bank account |
| 5 | 4/5/2021 | Defendant Williams' email to Missouri DHSS containing an annual management plan |
| 6 | 4/16/2021 | The State of Missouri's payment of $790,342.37 in meal reimbursement funds to T.B.F.'s bank account |
| 7 | 5/14/2021 | The State of Missouri's payment of $694,679.62 in meal reimbursement funds to T.B.F.'s bank account |
| 8 | 7/14/2021 | The State of Missouri's payment of $1,178,006.26 in meal reimbursement funds to T.B.F.'s bank account |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT NINE
**(Money Laundering Conspiracy: 18 U.S.C. § 1956(h))**

29. Each of the allegations included in this Indictment is hereby incorporated by reference as if fully set forth herein.

30. As described above, Defendant Williams and Defendant Warford worked together to conceal T.B.F.'s fraudulent reimbursement claims for millions of meals that T.B.F. never served. They did so by creating a false paper trial—through financial transactions and phony invoices—making it appear as though T.B.F. purchased meals when it did not. To create the false

10

record of meal purchases, Defendant Williams wrote checks from her T.B.F. bank account (Midwest BankCentre bank account ending in 5927) to the W.C.C. bank account (Midwest BankCentre account ending in 5875) that she controlled along with Defendant Warford. Defendants executed these financial transactions to conceal the nature, source, ownership, and control of the fraudulent proceeds that T.B.F. received as a result of their wire fraud scheme.

31. Over the course of their conspiracy, Defendant Williams wrote the following checks from her T.B.F. bank account (Midwest BankCentre bank account ending in 5927) to the W.C.C. bank account (Midwest BankCentre account ending in 5875) that she controlled along with Defendant Warford.

| Date | Check # | Memo | Amount |
|---|---|---|---|
| 06/22/2020 | 1001 | Food service/vendor | $ 16,000.00 |
| 06/26/2020 | 1004 | Food service | $ 44,593.00 |
| 07/17/2020 | 1023 | Food service | $ 49,537.20 |
| 08/26/2020 | 1005 | Food service/vendor | $ 40,000.00 |
| 09/01/2020 | 1008 | Food service/vendor | $ 68,000.00 |
| 09/28/2020 | 1009 | Food service | $ 17,900.00 |
| 10/20/2020 | 1012 | Food service | $ 50,000.00 |
| 10/26/2020 | 1013 | Food service | $ 9,025.50 |
| 11/16/2020 | 1016 | Vendor | $ 50,000.00 |
| 12/11/2020 | 1017 | Vendor | $ 25,000.00 |
| 12/21/2020 | 1019 | Vendor | $ 165,000.00 |
| 01/27/2021 | 1061 | Vendor Servicer | $ 300,000.00 |
| 01/27/2021 | 1062 | Vendor pay | $ 27,342.50 |
| 03/03/2021 | 1026 | Vendor/SFSP/CACFP | $ 354,638.14 |
| 04/13/2021 | 1066 | food service | $ 130,667.00 |
| 04/13/2021 | 1067 | Food Service | $ 535,986.88 |
| 04/21/2021 | 1070 | Vendor pay | $ 671,186.46 |
| 06/07/2021 | 1073 | Vendor pay | $ 572,459.06 |
| 07/08/2021 | 1074 | Vendor pay | $ 572,459.00 |
| 09/01/2021 | 2001 | June 2021 invoice | $ 498,099.94 |
| 09/01/2021 | 2004 | July inv. | $ 442,444.54 |
| 03/02/2022 | 1001 | Vendor services | $ 386,787.40 |
| 03/02/2022 | 1002 | Vendor services | $ 58,969.90 |
| 03/02/2022 | 1005 | Vendor services | $ 273,442.76 |
| 03/02/2022 | 1006 | Vendor services | $ 1,019.15 |

11

| 03/02/2022 | 1007 | Vendor services | $ 22,961.75 |
| 03/02/2022 | 1008 | Vendor services | $ 40,968.20 |
| 08/05/2022 | 1106 | 22001 Invoice | $ 129,733.25 |
| 09/07/2022 | 1108 | Inv 22-0003 | $ 136,029.45 |
| 09/07/2022 | 1109 | Inv 22-0004 | $ 131,946.00 |
| 10/20/2022 | 1113 | Inv 22-0005 | $ 133,881.85 |
| 12/27/2022 | 1117 | Inv 22-0002 | $ 110,612.43 |
| 08/01/2023 | 1122 | June invoice 23-006 | $ 33,038.40 |
| 09/29/2023 | 1144 | Partial Summer Food Aug. | $ 12,000.00 |
| | | **TOTAL** | **$ 6,111,729.76** |

32. These financial transactions were designed to conceal the nature, source, ownership, and control of the fraudulent proceeds that T.B.F. received as a result of their wire fraud scheme. To further conceal and disguise the nature, source, ownership, and control of the fraudulently received state meal funds, Defendants created phony W.C.C. invoices to falsely and fraudulently make it appear that the payments from T.B.F. were for reimbursable meals that W.C.C. provided to T.B.F. In truth and fact, however, those invoices were created to enable Defendants' improper use of state meal funds for their own personal expenses.

33. Also in furtherance of their conspiracy, Defendants conducted financial transactions from their W.C.C. bank account (Midwest BankCentre account ending in 5875) with fraud proceeds that were designed to conceal the nature, source, ownership, and control of those proceeds. For example, to conceal Defendants' use of stolen public meal dollars to purchase themselves a $1.44 million residence, Defendant Warford wired the purchase price of the home from Defendants' W.C.C. bank account (Midwest BankCentre account ending in 5875) to his own personal checking account (Navy Federal Credit Union bank account number ending in 0939), and then to First American Title—all within 24 hours of Defendants' home purchase. Then, to further disguise Defendants' improper, personal use of public funds, Defendant Warford represented to

the Internal Revenue Service that Defendants' $1.44 million home purchase was a business expense of W.C.C.

34. Beginning in or about September 2020, and continuing through at least on or about February 26, 2025, in the Eastern District of Missouri and elsewhere, the defendants,

**DIARRA WILLIAMS and
NICHOLAS WARFORD,**

voluntarily and intentionally combined, conspired, confederated, and agreed with each other and others known and unknown to the Grand Jury, to commit the following offense against the United States:

(a) To knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activities, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, and that while conducting the financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT TEN
### (Obstruction of an Official Proceeding: 18 U.S.C. § 1512(c)(2))

35. Each of the allegations in this Indictment is hereby incorporated by reference as if fully set forth herein.

36. On or about November 29, 2023, in the Eastern District of Missouri, the defendants,

**DIARRA WILLIAMS,**
**NICHOLAS WARFORD,**

did corruptly obstruct, influence, and impede, and did attempt to corruptly obstruct, influence, and impede, an official proceeding, to wit, in response to a federal grand jury subpoena, Defendants produced phony W.C.C. invoices, which falsely reflected purchases of reimbursable meals that were never made.

All in violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

### FORFEITURE ALLEGATION

The Grand Jury further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Sections 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Counts One through Eight, Defendants Williams and Warford shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation.

2. Pursuant to Title 18, United States Code, Sections 982(a), upon conviction of an offense in violation of Title 18, United States Code, Section 1956, as set forth in Count Nine, the defendants shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, involved in such offense, or any property traceable to such property.

3. Specific property subject to forfeiture includes, but is not limited to, the following:

   a. A property located at 8416 Rockridge, Edwardsville, IL 62025;
   b. A 2019 Ram 1500 Rebel (VIN: 1C6SRFLT5KN784521);
   c. A 2018 Lincoln Navigator (VIN: 5LMJJ2LT2JEL02437);

d.  A 2011 Mercedes Benz Sprinter (VIN: WD3PE7CC0B5602167);
    e.  A 2021 Ram Promaster (VIN: 3C6LRVBG7ME512286);
    f.  A 2021 Ram Promaster (VIN: 3C6LRVBG9ME512287); and
    g.  A 2017 Chrysler Pacifica (VIN: 2C4RC1GG3HR811929).

    3.  If any of the property described above, as a result of any act or omission of the
defendant:

    a.  cannot be located upon the exercise of due diligence;
    b.  has been transferred or sold to, or deposited with, a third party;
    c.  has been placed beyond the jurisdiction of the court;
    d.  has been substantially diminished in value; or
    e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney

15